**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Donnie G. BRUNSON,**
**Defendant–Appellant.**

No. 88–4931.

United States Court of Appeals,
Fifth Circuit.

Aug. 21, 1989.

F. Clay Tillman, Jr., Tillman & Anderson, Leesville, La., Bobby L. Culpepper, Culpepper, Teat & Avery, Jonesboro, La., for defendant-appellant.

William J. Flanagan, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before POLITZ, DAVIS, and DUHE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The defendant appeals his conviction and sentence following a conviction for corruptly soliciting or demanding something of value to influence his behavior as a bank director and attorney in violation of 18 U.S.C. § 215.[1] We affirm the conviction but vacate the sentence and remand for resentencing.

I.

Appellant, Donnie G. Brunson, was the attorney for and a member of the board of directors of the People's Bank of Chatham, Louisiana (the bank). Brunson was also an assistant district attorney for the judicial district that encompassed Chatham. Gayle Grayson, a customer of the bank,

---

1. Section 215 provides in part: "Whoever ... as an officer, director ... or attorney of a financial institution, corruptly solicits ... or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution shall be [fined or imprisoned]."

deposited a $2500 check to her account and the bank allowed her to draw $2,000 on this account before it learned that the check was worthless. After she received a letter from the district attorney's office threatening arrest unless full payment was "received by this office within ten days" she contacted the bank. The bank referred her to the district attorney's office and Brunson. Ms. Grayson met with Brunson and asked for permission to establish a payment schedule but Brunson told her that the bank would not accept partial payments. Brunson suggested to Grayson that with her good looks she should not worry about a $2500 check; he alluded to a number of ways she could earn money to cover the overdraft, including dancing for men; having a boyfriend help out or engaging in prostitution with himself or others. Brunson made repeated threats of arrest if the check was not paid.

Between September and early December Grayson made four deposits to her account totalling over $800. Brunson advised the bank not to credit these deposits against the overdraft lest they be considered partial payments. Brunson and Ms. Grayson had several additional conversations, both by telephone and in person about how she could cover the overdraft. In most of these conversations he reiterated his suggestion to Ms. Grayson that she trade sexual favors to him and his friend for money to cover the overdraft; he emphasized his ability to help her both because of his position at the bank and his position as assistant district attorney.

Ms. Grayson contacted the FBI in late December who arranged to tape record her telephone conversations with Brunson. In the first recorded conversation, Grayson discussed arrangements for her to provide sexual favors to Brunson and another man. Brunson, in response to Ms. Grayson's questions, assured her that furnishing these sexual favors would "help a whole lot" in solving her problem at the bank although it would not be an "even swap." In a second telephone conversation, Brunson told Grayson that his directorship at the bank "would help a lot more" than his position as assistant district attorney in resolving Ms. Grayson's problem.

Ms. Grayson agreed to meet Brunson at a motel on the evening of December 26, 1987. When Brunson and Ms. Grayson met in the parking lot of the motel, defendant told her that if her worthless check "gets turned in on you, you are looking at big time." He told her that he had been able to persuade the bank to defer prosecution on the check because he was a bank board member, the bank's attorney and also the assistant district attorney. As Brunson and Ms. Grayson walked towards the motel, the FBI arrested Brunson. Brunson had a room key in his pocket.

After he was arrested, Brunson admitted to the arresting officers that as the bank's attorney and member of its board of directors he had persuaded the bank to extend Ms. Grayson additional time to cover the overdraft created by the worthless check.

The indictment against Brunson charged that Brunson was a director and attorney of the bank, that he corruptly solicited and demanded sexual favors from Grayson for himself and others, in exchange for which he would be influenced concerning repayment of Grayson's overdrawn checking account. The jury returned a verdict of guilty and the district court imposed a sentence of twenty-seven months.

Brunson raises several points of error on appeal. We deal with each in turn.

## II.

### A.

■ First, Brunson contends that the indictment does not charge an offense under 18 U.S.C. § 215.

Section 215 provides in part: "Whoever ... as an officer, director ... or attorney of a financial institution, corruptly solicits ... or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of such institution shall be [fined or imprisoned]." 18 U.S.C. § 215(a)(2).

Brunson argues that section 215 requires proof that the defendant intended to injure the bank. The plain language of section 215 contradicts Brunson's argument. The statute makes it a crime for a bank director or attorney to corruptly solicit or agree to accept something of value in return for his influence on a banking transaction. The district court correctly rejected Brunson's argument. ·

### B.

■ Brunson next argues that the word "corruptly" as used in the statute reflects an intent to require a high level of intent of an offender. Brunson offers no authority in support of his argument and we have found none. The word "corruptly" was added to the statute in 1986 (Pub.L. No. 99–370, 100 Stat. 779 (1986)) to make it clear that section 215 was not so broad that it would reach "all kinds of otherwise legitimate and acceptable conduct." H.R.Rep. No. 335, 99th Cong. 1st Sess. 3, reprinted in 1986 U.S.Code Cong. & Admin.News 1782, 1784.[2]

The district court correctly denied defendant's motion to dismiss the indictment because it alleged all of the requisite elements of the offense and charged an offense under section 215.

### C.

■ Brunson argues next that 18 U.S.C. § 215 is unconstitutionally vague. This argument is predicated primarily on the premise that the title of section 215 is narrower than the body of the act and therefore does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). The original title of the act, as it read in 1948—Receipt of Commissions or Gifts for Procuring Loans—was retained when the statute

was amended and substantially broadened in 1984. Pub.L. No. 98–473, § 1107, 98 Stat. 2145–46, *reprinted* in 1984 U.S.Code Cong. & Admin.News 3182, 3515. Thus, the old title that described a much narrower act was retained while the text of the statute was greatly expanded.

The Supreme Court has made it clear, however, that "the title is not part of an act and cannot enlarge or confer power, or control the words of the act unless they are doubtful or ambiguous, ... The ambiguity must be in the context, and not in the title, to render the latter of any avail." *United States v. Oregon & California Railway Co.,* 164 U.S. 526, 541, 17 S.Ct. 165, 170, 41 L.Ed. 541 (1896); *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 19 n. 14, 101 S.Ct. 1531, 1541 n. 14, 67 L.Ed.2d 694 (1981). *See also Strathearn Steamship Co. v. Dillon,* 252 U.S. 348, 354, 40 S.Ct. 350, 351, 64 L.Ed. 607 (1920).

The text of section 215 is not ambiguous. The statute plainly sets forth the conduct that it prohibits and the scope of its coverage. Persons of ordinary intelligence will understand how to conform their conduct to the law. The district court correctly rejected defendant's argument. *See Grayned,* supra.

### D.

■ Brunson next argues that because the indictment charged Brunson with soliciting sexual favors with the value of $1,198.62 or more while the interrogatories to the jury required the jury to determine whether the "thing of value" was worth "over $100," the indictment in reality charged eleven separate and distinct violations.

A violation of 18 U.S.C. § 215 is considered a felony if the value of the thing solicited or demanded exceeds $100. The jury obviously accepted the government's theory that Brunson demanded that Grayson furnish him or others with sexual fa-

---

**2.** The district court carefully explained the meaning of corruptly as "an act done voluntarily and intentionally and with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means. The motive to act corruptly is ordinarily a hope or expectation of either financial gain or other benefit to oneself or some profit or benefit to another." Record Vol. 2, pp. 366–67.

vors over an indeterminate period of time until the entire debt of $1,198.62 to the bank was extinguished. The government contended that the thing of value was the entire debt to the bank that Brunson sought to have Ms. Grayson pay in installments over a period of time. The indictment charged only one crime. The jury found the value of the thing demanded exceeded $100. Defendant's argument that the indictment is duplicitous is without merit.

### E.

■ Defendant next argues that the evidence was insufficient to support the verdict. The standard of review is a familiar one.

The standard of review for claims of insufficiency of the evidence is whether, after viewing the evidence presented and all inferences reasonably drawn therefrom in the light most favorable to the jury verdict, any rational jury could have found the essential elements beyond a reasonable doubt. Neither the jury nor this court is required to examine each circumstance in isolation.... All reasonable inferences and credibility choices which support the jury's verdict must be accepted....

*United States v. Gonzales*, 866 F.2d 781, 783 (5th Cir.1989).

To establish a violation of 18 U.S.C. § 215(a)(2), the government was required to prove that Brunson: 1) as a director or attorney of the bank, 2) corruptly solicited or demanded for the benefit of any person, 3) a thing of value (exceeding $100) from Grayson, 4) intending to be influenced or rewarded in connection with any business or transaction of the institution.

Defendant does not seriously dispute any of the above elements except his intent to be influenced or rewarded in connection with the worthless check and overdrawn account. Brunson contends that his solicitation of Grayson for sexual favors may have violated the state prostitution statute but did not relate to a transaction at the People's Bank. We disagree. Brunson's solicitation of sexual favors from Grayson was closely related to her overdrawn account. Brunson told Grayson that he could persuade the bank to delay demand for payment on the overdraft because of his positions of director and attorney at the bank and his position as assistant district attorney. Also, Brunson admittedly assisted Grayson by obtaining time for her to repay the overdrawn account. Brunson explained to the bank officer that Ms. Grayson was having marital problems which was the cause of the delay.

Viewing the evidence and inferences in the light most favorable to the verdict, the evidence was sufficient to support the verdict.

### F.

■ The defendant next raises a number of objections to the court's jury charge. Except for one of the complained of instructions, however, the defendant failed to timely object in the district court.[3] We do not consider these errors "[w]here an objection to a jury instruction is raised for the first time on appeal." *United States v. Gammage*, 790 F.2d 431, 434 (5th Cir.1986); *United States v. Branch*, 850 F.2d 1080, 1083 (5th Cir.1988).

The single instruction in the court's charge to which Brunson objected relates to the court's "missing witness" instruction.[4] The defendant's only complaint was the court's failure to give him advance

---

**3.** These alleged errors which are not preserved for appeal include the absence of an instruction on the definition of "demand" as used in 18 U.S.C. § 215, a confusing verdict form, the failure to charge a lesser included offense and the instruction on the definition of "corruptly" as used in 18 U.S.C. § 215.

**4.** The court charged "now would be a good time to tell you also that as a general rule where a

witness is available to both the prosecution and the defense, no inference should be drawn against the party failing to call such witness. However, the government in every criminal case has the ultimate burden of proof. A defendant is not obliged to call any witness. He can rely on his own presumption of innocence, should he choose to do so.

notice that it intended to include this instruction in the charge. But Brunson does not identify any particular witness who was missing or demonstrate in any other way how he was prejudiced by the instruction. This argument is therefore meritless.[5]

### G.

Brunson finally levels a number of objections to his sentence.

His constitutional challenge to the sentencing guidelines is foreclosed by *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

■ In arriving at its sentence, the district court selected guideline section 2C1.1 (for "Offering, Giving, Soliciting or Receiving a Bribe; Extortion Under Color of Official Right") as the appropriate offense guideline with a base offense level of 10. The court then made an 8 level upward adjustment authorized for a specific offense characteristic under section 2C1.1 for "a bribe for the purpose of influencing ... any official holding a high level decision-making or sensitive position." Section 2C1.1(b)(2). The court refused defendant's request for a two-level reduction for accepting responsibility for his offense. Section 3E1.1.

With no criminal history Brunson faced a sentence ranging from 27 to 33 months. The court imposed a sentence of 27 months, well under the statutory maximum of five years.

Brunson contends first that the appropriate offense guideline is section 2B4.1 rather than section 2C1.1. Section 2B4.1 is entitled "Bribery and Procurement of Bank Loan and Other Commercial Bribery" and carries a base offense level of 8. The commentary lists 18 U.S.C. § 215 as one of the statutory provisions covered by this guideline. The statutory index provided in Appendix A to the guidelines lists 2B4.1 as the only applicable offense guideline for conviction of an offense under 18 U.S.C. § 215.

The sentencing guidelines provide instructions on how to select the appropriate offense guideline. Section 1B1.2(a) provides: "The court shall apply the offense guideline section in Chapter Two (Offense Conduct) most applicable to the *offense of conviction.*" (emphasis added).

The record reveals that Brunson used his position as assistant district attorney as well as his positions as director and attorney for the bank to solicit sexual favors from Ms. Grayson. However, the government elected to indict and try Brunson for his conduct as a bank director and attorney. Brunson's status as an assistant district attorney was irrelevant to the "offense of conviction." It follows therefore that section 2B4.1 relating to commercial bribery rather than 2C1.1 relating to bribery of a public official, is the most applicable guideline. The commentary following section 2B4.1 which refers us to the statute of conviction, 18 U.S.C. § 215, and the connection established between 18 U.S.C. § 215 and section 2B4.2 in Appendix A of the guidelines confirms this selection.

Application note 1 under section 2B4.1 does not require us to reach a different result. That note provides that: "This

---

5. Brunson alleges several other miscellaneous errors, none of which merit reversal. Contrary to Brunson's alleged complaints, the jury instruction and the verdict form appropriately distinguish between a felony and a misdemeanor (where the value of the thing solicited does not exceed $100). Brunson also complains that his wife's outburst during the government's closing argument was prejudicial and prevented a fair trial. Brunson however did not voice any objection at the time of the trial and we will not consider his belated ones now. Consequently, we do not consider this argument because it is not in the record before us. As we stated in *United States v. Gerald,* 624 F.2d 1291, 1296 n. 1

(5th Cir.1980), "It is appellant's responsibility to insure the inclusion in the record of all matters he intends to rely upon on appeal. Fed.R. App.P. 10(e) and 11(e); 9 J. Moore, Moore's Federal Practice, Sections 210.03, 211.05."

Brunson also asserts that "During a short recess the Honorable trial court apparently visited the jury in its chambers and apparently gave them instruction or other direction or explanation of the sequence of the interruption." Similarly, we have found no support for this argument in the record before us and we do not consider it. *See Gerald,* 1296 n. 1; *United States v. Johnson,* 846 F.2d 279, 283 (5th Cir.1988).

guideline covers commercial bribery offenses and kickbacks that do not involve officials of federal, state or local government. See Part C, Offenses Involving Public Officials, if governmental officials are involved."

We interpret the above application note to direct us to Part C of the guidelines if the offense for which the defendant was convicted relates to bribery of a public official.

Because the appropriate sentencing guideline in this case is provided by section 2B4.1, the specific offense characteristic provided in 2C1.1(b)(2) (a bribe to influence officials) used by the district court to enhance Brunson's sentence is inapplicable.

The commentary or application notes provided to explain section 1B1.2 make it very clear that the relevant specific offense characteristics are those prescribed under the appropriate offense guideline: "Section 1B1.2(b) directs the court, once it has determined the applicable guideline (i.e.) the applicable guideline section from Chapter Two under section 1B1.2(a) to determine any applicable specific offense characteristics (under that guideline), and any other applicable sentencing factors pursuant to the relevant conduct definition in 1B1.3." Application note 2, following section 1B1.2. *See also United States v. Mejia–Orosco,* 867 F.2d 216, 219 (5th Cir.1989). The district court therefore erred in applying the section 2C1.1 specific offense characteristic to enhance a sentence governed by a 2B4.1 offense guideline.

The government also argues that the following language contained in the introduction to Appendix A of the guidelines authorizes the district court to select section 2C1.1 as the offense guideline: "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, the court is to apply the guideline section which is most applicable to the conduct for which the defendant was convicted."

It is not completely clear to us under what circumstances the commission con-templated deviation from the suggested guidelines for an "atypical case." Given the emphatic statutory requirement that the "court shall apply the offense guideline section ... most applicable to the offense of conviction," the commentary cannot have the effect urged upon us by the government. Section 1B1.2(a). The government's interpretation of this commentary would give the district court, in choosing the offense guideline, the discretion to disregard the conduct essential to the conviction and base its selection on some other conduct. We reject the government's argument therefore that the introduction to Appendix A authorizes the district court in selecting the offense guideline to disregard Brunson's conduct as an officer and director of the bank and rely instead on his activity as an assistant district attorney, a fact irrelevant to the conviction. Such an interpretation of the commentary would conflict with the guideline itself. In this circumstance the guideline clearly prevails. *See* 28 U.S.C. § 994(a)(1) and (2); section 1B1.7, Sentencing Guidelines.

In conclusion, we agree with Brunson that the district court did not choose the sentencing guideline that was most applicable to the offense of conviction and the case must be remanded for resentencing. At resentencing the district court may consider whether it wishes to depart from the guidelines because of Brunson's conduct as a public official if it concludes that this conduct was not adequately taken into consideration by the guideline. See 18 U.S.C. § 3553(b); section 5K2.0 Sentencing Guidelines. That determination should be made by the district court in the first instance.

The judgment of conviction is AFFIRMED; the sentence is VACATED; and the case is REMANDED for resentencing.